FILED
MAY 0 5 2020
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CR-218-1BR(4)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | |
| BRENDA JOYCE HALL | ) | |

The Grand Jury charges the following:

## I. INTRODUCTION

### A. Federal Student Aid

At all times relevant to this Indictment:

1. The Department of Education ("ED"), an agency of the United States Government, provided oversight and administration of federal funds provided to students under the authority of Title IV of the Higher Education Act of 1965, as amended. Funds disbursed under Title IV included the Federal Pell Grant Program and the Federal Direct Student Loan Program.

2. The Pell Grant Program ("Pell Grant") provided grants to eligible students in need of financial assistance to pursue post-secondary education at participating institutions. Pell Grants were made using ED funds and were provided to students for educational purposes. They did not have to be repaid by the

1

student recipient. Pell Grants were awarded to students who had not yet earned a bachelor's or professional degree.

3. Under the Federal Direct Student Loan Program ("FDSLP"), the federal government borrowed funds from the United States Treasury and disbursed the loan directly to the student at his or her school. The student repaid the loan directly to the federal government. Direct Subsidized Stafford Loans were awarded to students who demonstrated financial need. Because ED subsidized interest, borrowers were not charged interest while enrolled in school at least halftime or during grace and deferment periods. Direct Unsubsidized Stafford Loans were awarded to students regardless of financial need. Borrowers were responsible for paying the interest that accrued during any period. For a student to be eligible for a student loan under FDSLP, the student must have received a high school diploma or its equivalent.

4. Federal Title IV monies, whether in the form of Pell Grants, or in the form of FDSLP, are referred to collectively in this Indictment as "Federal Student Aid."

5. To be eligible to receive Federal Student Aid, federal regulations required the student to complete a Free Application for Federal Student Aid ("FAFSA") that is submitted to ED's Central Processing System ("CPS") in Clarksville, Virginia. The CPS calculated the FAFSA application information submitted by the student using the appropriate Federal Methodology to produce the Expected Family Contribution ("EFC") and also performed data matching with

various other federal agencies to confirm eligibility requirements. The CPS would electronically issue an Institutional Student Information Record ("ISIR") to post-secondary institutions designated by the student on the FAFSA. The ED and the post-secondary institutions relied upon the information that the student provided on the FAFSA to determine whether the student was eligible to receive student financial aid and the amount of any student loan or grant. The FAFSA required student applicants to certify they would use the Federal Student Aid only to pay the cost of attending a post-secondary institution and notified them that purposely giving false or misleading information on the FAFSA may subject the student to criminal penalties, including payment of a fine, imprisonment, or both.

6. Federal Student Aid had to be used for an educational purpose. Specifically, the Federal Student Aid could be used to satisfy tuition and fees charged by the institution, as well as other expenses incurred by the student to pursue an education program, such as books, supplies, transportation, and living expenses.

7. To ensure that the Federal Student Aid was used for educational purposes, the funds were sent from ED, or the lender, directly to the institutions where the students were enrolled. The institutions applied those funds to a student's account to cover the student's tuition, fees, and other educationally related charges incurred by the student at the institution. When the total amount of Title IV Aid credited to the student's account exceeded the total amount of authorized charges, then the institutions would disburse the remaining credit balance,

3

sometimes referred to as a "refund check," to the student for use on other educational expenses. A refund check as described in this paragraph is referred to in this Indictment as a "Credit Balance Refund."

## B. Background

8. Wake Technical Community College ("Wake Tech") was a public community college located in Raleigh, North Carolina. Wake Tech was a post-secondary educational institution that regularly received Federal Student Aid on behalf of its students. In addition to its numerous physical campuses, Wake Tech offered online instruction to students.

9. "The Ranch" consisted of a group of adults and children residing in a collection of buildings located in Godwin, Cumberland County, North Carolina. Although The Ranch consisted largely of several related families, outsiders and their children were also invited to, and did, reside on The Ranch over time.

10. JM owned and operated The Ranch. JM, who was among other things, a tent revival preacher, allowed various adults and children to reside on The Ranch. Various adults and children living on The Ranch assisted McCollum with his tent preaching activities. JM also owned several fish markets, located in Hope Mills, Fayetteville, and Lumberton (collectively the "Fish Markets"), within the Eastern District of North Carolina. Adults and children residing on The Ranch also performed work in the Fish Markets.

11. BRENDA JOYCE HALL was an individual who resided on The Ranch

4

and worked for JM on The Ranch and at the Fish Markets. HALL also owned and operated a non-public home school from The Ranch.

12. "Halls of Knowledge" also known as "Halls of Learning" was a non-public home school owned and operated by HALL. HALL registered Halls of Knowledge with the North Carolina Division of Non-Public Education no later than July of 2000. Halls of Knowledge was closed as a non-public home school on November 17, 2017.

13. In communications with the State of North Carolina, HALL referred to herself as the Chief Administrator of Halls of Knowledge. HALL further indicated that she operated Halls of Knowledge at 5953 McCollum Lane, Godwin, NC 28344, utilizing email address: "Babybhall@hotmail.com."

14. While Halls of Knowledge was licensed to perform non-public home schooling activities, HALL did not, in fact, provide complete high school level education to all minors on The Ranch through her home school. Instead, by middle and high school age, most children on The Ranch were directed to engage in work for JM, either on The Ranch, at tent revivals, or at the Fish Markets,

### C. The Scheme to Defraud

15. HALL, JM, and others known to the grand jury, carried out a scheme to fraudulently acquire hundreds of thousands of dollars in Federal Student Aid to fund the operations of The Ranch and the Fish Markets, and JM's other interests.

16. To carry out the scheme, JM, Hall, and others, would approach

5

individuals residing on The Ranch and solicit their enrollment in an online course of college-level studies at Wake Tech. The individuals that JM, HALL, and others solicited for enrollment at Wake Tech are referred to in this Indictment as the "Student Participants."

17. To attend the online course of college level studies at Wake Tech, the Student Participants were required to have successfully completed their high school level of education.

18. At the time that JM, HALL, and others solicited the Student Participants, however, most of the Student Participants had dropped out of high school and, as such, never graduated and obtained a genuine diploma. Likewise, none of the Student Participants completed their high school education through HALL's home school, the Halls of Knowledge.

19. Moreover, none of the Student Participants had the financial means to attend college. Instead, to pay the costs of tuition, all of the Student Participants would all require Federal Student Aid.

20. Many of the Student Participants had no genuine desire or intention to attend college courses and graduate from Wake Tech. In any event, having never graduated from high school, several Student Participants did not have the educational background to complete college courses.

21. JM, HALL, and others provided various assurances to the Student Participants get them to agree to be enrolled at Wake Tech. For example, various

Student Participants were told: (1) they would receive a high school diploma; (2) would receive a laptop or would get to keep some money; (3) they would not have to actually do the coursework; or (4) they would not be responsible for the student loans.

22. HALL created a fraudulent high school transcript for each of the Student Participants (hereinafter the "Fake Transcripts"). The Fake Transcripts represented that each of the Student Participants successfully completed four years of high school education through Halls of Knowledge. The Fake Transcripts also fraudulently represented, for each year of study, the courses allegedly taken by the Student Participant, and the grade the Student Participant received in each course. HALL directed another resident of The Ranch to notarize the Fake Transcripts.

23. HALL also generated a fraudulent high school diploma for each of the Student Participants. In some instances, HALL or JM provided a copy of the Halls of Knowledge diploma to the Student Participant.

24. To become enrolled at Wake Tech, students were required to provide, in addition to a copy of their high school diploma and transcript, various other biographical information. Students were also required to complete a FAFSA to enable them to obtain Federal Student Aid.

25. HALL assisted the Student Participants to become enrolled at Wake Tech, and to obtain Federal Student Aid at Wake Tech, by fraud. HALL caused a copy of the fraudulent Halls of Knowledge diplomas and Fake Transcripts for the Student Participants to be provided to Wake Tech during the enrollment process.

7

HALL also created and caused to be created fraudulent applications for enrollment and other documents for the Student Participants. These documents were fraudulent because, among other things, they represented that the Student Participants had completed their four year course of study at, and graduated from, Halls of Knowledge. In furtherance of the enrollment, HALL gave the Student Participants a packet of documents and directed the Student Participants to take the packet to enrollment officials at Wake Tech. HALL generally did not show the Student Participants the Fake Transcripts that were being provided to Wake Tech.

26. Wake Tech and ED received, and relied upon, the fraudulent documents and information supplied to them during the enrollment process. In addition to becoming enrolled in Wake Tech by fraud, Federal Student Aid was also awarded to the Student Participants based on the fraud.

27. To fund the Wake Tech tuition, the ED caused Federal Student Aid to be disbursed to Wake Tech. After tuition and related educational costs were paid, the remaining Credit Refund Balance, often several thousand dollars each semester for each student, was disbursed for the educational needs of each Student Participants.

28. Student Participants were not, in fact, permitted by JM, Hall, and others to receive and retain the entirety of their Credit Refund Balance. Instead, the Student Participants were directed in some instances to cash out the Credit Refund Balances and to provide the funds to JM. In other instances, the Student

8

Participants had any Credit Refund Balances transferred into accounts at The Ranch and the Fish Markets, which were controlled by HALL and JM.

29. HALL, JM, and others used the Credit Refund Balances disbursed for the educational benefit of the Student Participants, to fund the operations of The Ranch the Fish Markets, and other ventures.

30. After the Student Participants were enrolled at Wake Tech, the Students did not, in fact, attend all of the courses in which they were enrolled. Instead HALL, and others at The Ranch, would attend and complete courses on behalf of the Student Participants. In many instances, the Student Participants were enrolled in years of courses at Wake Tech, but attended only a small fraction, if any, of the courses.

31. In total, not less than $700,000 in Federal Student Aid was disbursed for the benefit of the Student Participants, based upon HALL's Fake Transcripts from Halls of Knowledge.

## COUNT ONE

### THE CONSPIRACY

32. Beginning at a time unknown, but no later than June 23, 2011, and continuing to a date unknown, but no earlier than in or around January of 2018, within the Eastern District of North Carolina and elsewhere, BRENDA JOYCE HALL and others known to the Grand Jury did knowingly and intentionally conspire, confederate, and agree to commit an offense against the United States, to wit, to

9

knowingly and willfully obtain, and assist others to obtain, by fraud and false statements, Federal Student Aid disbursed to permit the Student Participants attend college courses at Wake Tech, said funds being provided and insured under subchapter IV of Chapter 28 of United States Code Title 20, and part C of subchapter I of chapter 34 of United States Code Title 42, in violation of Title 20, United States Code, Section 1097(a).

### PURPOSE OF THE CONSPIRACY

33. It was the purpose of the conspiracy for the conspirators to cause the Student Participants to become enrolled in Wake Tech, and to obtain Federal Student Aid, based upon the Fake Transcripts.

### MANNER AND MEANS OF THE CONSPIRACY

34. Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

### OVERT ACTS

35. During the course of the conspiracy, a member of the conspiracy solicited at least one Student Participant to become enrolled at Wake Tech.

36. During the course of the conspiracy, HALL created and caused to be notarized at least one Fake Transcript.

37. During the course of the conspiracy, a member of the conspiracy caused at least one Fake Transcript to be provided to enrollment officials at Wake Tech.

38. During the course of the conspiracy, a member of the conspiracy caused at

10

least one false FAFSA to be transmitted to ED and Wake Tech, said FAFSA falsely representing that a Student Participant graduated from Halls of Knowledge.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH ~~ELEVEN~~ 10

39. Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

40. Between the dates listed in each row of the table below, in the Eastern District of North Carolina, the defendant, aiding and abetting others known to the grand jury, did knowingly and willfully obtain and attempt to obtain, and assist others to obtain, by fraud and false statements, the Federal Student Aid disbursed for each Student Participant identified in each row of the table below, to enable said student to attend college courses at Wake Tech, said funds being provided and insured under subchapter IV of Chapter 28 of United States Code Title 20, and part C of subchapter I of chapter 34 of United States Code Title 42:

| COUNT | DATES | STUDENT PARTICIPANT | Federal Student Aid |
|---|---|---|---|
| 2 | 7/7/2011 – 12/31/2017 | S.A. | $58,029.00 |
| 3 | 8/7/2013 – 12/31/2017 | S.M.A. | $29,249.00 |
| 4 | 11/26/2012 – 12/31/2017 | T.B. | $55,313.00 |
| 5 | 1/22/2015 – 12/31/2018 | D.E. | $41,326.00 |
| 6 | 1/14/2013 – 12/31/2018 | S.F. | $80,113.00 |
| 7 | 8/1/2012 – 12/31/2017 | D.J. | $50,038.00 |
| 8 | 8/12/2011 – 12/31/2016 | C.M. | $70,225.00 |
| ~~10~~ 9 | 9/10/2012 – 12/31/2017 | P.M. | $80,015.00 |
| ~~11~~ 10 | 1/11/2013 – 12/31/2018 | P.O. | $77,790.00 |

Each row of the foregoing table constituting a separate violation of Title 20, United

11

States Code, Section 1097(a) and Title 18, United States Code, Section 2.

## COUNT ~~TWELVE~~ ELEVEN 

### The Conspiracy

41. Beginning at a time unknown, but no later than July 7, 2011, and continuing to a date unknown, but no earlier than in or around January of 2018, within the Eastern District of North Carolina and elsewhere, BRENDA JOYCE HALL and others known to the Grand Jury did knowingly and intentionally conspire, confederate, and agree to commit an offense against the United States, to wit, having devised and attempted to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to transmit and cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

42. It was the purpose of the conspiracy for JM, HALL, and other residents of The Ranch, to financially benefit from the fraudulent acquisition and receipt of Credit Balance Refunds.

### MANNER AND MEANS OF THE CONSPIRACY

43. Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

44. It was further part of the conspiracy that, in some instances, the Credit Balance Refund of Student Participant would be deposited into a debit account held at BankMobile, located in New Haven, Connecticut.

45. It was further part of the conspiracy that JM and HALL operated bank accounts for the Fish Markets which were capable of receiving Electronic Fund Transfers from debit accounts that had been credited with Credit Refund Balances. JM and HALL operated these accounts in the Eastern District of North Carolina.

46. It was further part of the conspiracy that, in some instances, Student Participants would have Credit Balance Refunds deposited directly into their accounts by the ED. The conspirators caused these funds to be extracted or transferred for the benefit of JM, HALL, and The Ranch.

## OVERT ACTS

47. In furtherance of the conspiracy, and to effect the objects thereof, there were committed in the Eastern District of North Carolina various overt acts, including, but not limited to the following:

48. A member of the conspiracy solicited at least one Student Participant to become enrolled at Wake Tech.

49. HALL created and caused to be notarized at least one Fake Transcript.

50. A member of the conspiracy caused at least one Fake Transcript to be provided to enrollment officials at Wake Tech.

51. A member of the conspiracy caused at least one false FAFSA to be

13

transmitted to ED and Wake Tech, said FAFSA falsely representing that a Student Participant graduated from Halls of Knowledge.

52. A member of the conspiracy caused funds from at least one Credit Balance Refund to be transferred to accounts controlled by HALL and JM.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS ~~THIRTEEN~~ 12 THROUGH ~~TWENTY-FOUR~~ 23

### THE SCHEME

53. Beginning at a time unknown, but no later than July 7, 2011, and continuing to a date unknown, but no earlier than in or around January of 2018, within the Eastern District of North Carolina and elsewhere, BRENDA JOYCE HALL, aiding and abetting others, devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

54. Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

55. It was part of the scheme that, in some instances, the Credit Balance Refund of Student Participant would be deposited into a debit account held at BankMobile, located in New Haven, Connecticut.

56. It was further part of the scheme that JM and HALL operated bank accounts for the Fish Markets which were capable of receiving wires and Electronic

Fund Transfers from debit accounts that had been credited with Credit Refund Balances. JM and HALL operated these accounts in the Eastern District of North Carolina.

57. It was further part of the scheme that, in some instances, Student Participants would have Credit Balance Refunds deposited directly into their accounts by the ED. These funds were extracted or transferred for the benefit of JM, HALL, and The Ranch.

## USE OF THE WIRES

58. On or about each of the dates set forth below, in the Eastern District of North Carolina and elsewhere, the defendant, BRENDA JOYCE HALL, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count:

| COUNT | DATE | WIRE |
|---|---|---|
| 12 | 9/22/2016 | $4,230.11 Wake Tech Credit Balance Refund for S.M.A. transferred from BankMobile in New Haven, CT to WoodForest Bank Account ending in *5581 in Fayetteville, NC belonging to S.M.A. |
| 13 | 6/22/2015 | $2,168.25 Credit Balance Refund for D.E. transferred from BankMobile in New Haven, CT to Bank of America Account "Dba John C's Fish Market, Brenda Hall Sole Prop Bank of America" ending in *1303, in Hope Mills, NC |
| 14 | 7/23/2015 | $716.50 Wake Tech Credit Balance Refund for D.E. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| 15 | 9/23/2015 | $5,434.00 Wake Tech Credit Balance Refund for D.E. transferred from BankMobile in New Haven, CT to BB&T |

15

| | | |
|---|---|---|
| | | Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~17~~ 16 | 11/12/2015 | $721.50 Wake Tech Credit Balance Refund for D.E. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~18~~ 17 | 2/18/2016 | $6,119.50 Wake Tech Credit Balance Refund for D.E. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~19~~ 18 | 7/14/2016 | $935.00 Wake Tech Credit Balance Refund for D.E. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~20~~ 19 | 10/14/2015 | $7,146.50 Wake Tech Credit Balance Refund for S.F. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~21~~ 20 | 2/18/2016 | $6,796.05 Wake Tech Credit Balance Refund for S.F. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~22~~ 21 | 9/23/2015 | $6,649.50 Wake Tech Credit Balance Refund for P.O. transferred from BankMobile in New Haven, CT to BB&T Bank Account JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~23~~ 22 | 2/18/2016 | $6,422.98 Wake Tech Credit Balance Refund for P.O. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |
| ~~24~~ 23 | 6/20/2016 | $689.85 Wake Tech Credit Balance Refund for P.O. transferred from BankMobile in New Haven, CT to BB&T Bank Account "JM Dba John C's Fish Market" ending in *8783, in Godwin, NC |

Each entry in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT ~~TWENTY-FIVE~~ 24 

59. Introductory Paragraphs 1 through 31, and 40 through 50 are realleged and incorporated by reference into this Count.

60. On or about November 10, 2015, in the Eastern District of North Carolina, the defendant, BRENDA JOYCE HALL, aiding and abetting others, did knowingly transfer, possess, and use, without lawful authority, certain means of identification of other persons, to wit, the name and date of birth of R.C., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349, knowing that said means of identification belonged to another actual person, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT ~~TWENTY-SIX~~ 25 

61. Introductory Paragraphs 1 through 31, and 40 through 50 are realleged and incorporated by reference into this Count.

62. On or about June 21, 2016, in the Eastern District of North Carolina, the defendant, BRENDA JOYCE HALL, aiding and abetting others, did knowingly transfer, possess, and use, without lawful authority, certain means of identification of other persons, to wit, the name and date of birth of D.W., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349, knowing that said means of identification belonged to another actual person, in violation of Title

17

18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE NOTICE

The Defendant is hereby given notice that all of the Defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offenses set forth in Counts Twelve through Twenty-Four of this Indictment, the Defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by 28 United States Code, Section 2461(c)), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such violation(s).

The forfeitable property includes, but is not limited to, the gross proceeds of the offenses described above actually obtained by the Defendant in the amount of at least $200,822.42 in U.S. currency.

If any of the above-described forfeitable property, as a result of any act or omission of the Defendant,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said Defendant up to the value of the above forfeitable property.

A TRUE BILL
**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

Foreperson

Date: 5-5-2020

ROBERT J. HIGDON, JR.
United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

19

Case 5:20-cr-00218-BR   Document 5   Filed 05/05/20   Page 19 of 19